# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

KIMBERLY ANN COPPERSMITH,

                          Plaintiff,

v.

                           Case No. 10-CV-939-JPS

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                        Defendant.             ORDER

On May 5, 2006, and May 11, 2006, plaintiff Kimberly Ann Coppersmith ("Coppersmith") filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") with the Social Security Administration, alleging a disability beginning on October 21, 2004, due to a brain aneurysm in 2003 as well as headaches, memory loss, and mobility problems. Coppersmith's disability claims were denied both upon the initial application and upon reconsideration. After these denials, Coppersmith filed for a hearing before an Administrative Law Judge ("ALJ"). A hearing occurred on July 16, 2009, where Coppersmith and a vocational expert testified. On August 24, 2009, the ALJ concluded that Coppersmith was ineligible for SSI and DIB. Subsequently, the Appeals Council of the Social Security Administration denied review, rendering the ALJ's decision final. As a consequence, Coppersmith filed this action for judicial review of the Commissioner of Social Security's decision denying the plaintiff's applications for SSI and DIB.

1.    Background

Plaintiff's allegations of disability stem principally from complaints of headaches, dizziness, mobility issues, and frequent falling. In 2003, plaintiff was found to have an incidental aneurysm. (Tr. 13). On December 29, 2003, she underwent surgery to have the aneurysm clipped. (*Id.*). Coppersmith's post-operative examinations did not reveal any surgical complications and she received no follow-up therapies. (Tr. 197, Tr. 302). With regard to her complaints of headaches, dizziness, and frequent falling, Coppersmith has undergone extensive work-ups – including diagnostic testing and physical examinations. (Tr. 364, 466-67, 550, 795-97). Results from these tests and examinations have all been negative, causing Coppersmith's neurologist and psychologist to suggest that plaintiff's symptoms are likely psychogenic in nature. (Tr. 364, 437-38, 466-67, 550-53, 795-97). The record reflects that Coppersmith has been diagnosed by various physicians with conversion disorder, adjustment disorder, and major depressive disorder. (Tr. 421-27, 691-92).

At the hearing before the ALJ, plaintiff testified that she had worked as a daycare teacher until October of 2004 when she was fired because a parent alleged she hit a child. (Tr. 33). The onset date of her disability is also the day she was terminated from her daycare teacher position; however, Coppersmith also testified that she had not consistently worked since she was found to have the aneurysm in 2003. (Tr. 35-36). According to Coppersmith, her symptoms of dizziness occur suddenly, six or seven times daily. (Tr. 38). Coppersmith testified that sometime in 2007 the dizzy spells reduced to only four or five times daily due to medication prescribed by her neurologist. (Tr. 38). Her dizzy spells last for approximately 10 to 15 minutes

Case 2:10-cv-00939-JPS   Filed 12/16/11   Page 2 of 14   Document 21

at a time and require her to sit or lie down. (Tr. 41). She testified that she used a walker to get around so she would not fall if she got dizzy. (Tr. 40). She also testified that she has debilitating headaches every day. (Tr. 42).

2.     Standard of Review

When reviewing a Social Security benefits determination, the court must uphold the ALJ's decision if it is supported by substantial evidence and is free of legal error. 42 U.S.C. § 405(g); *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence is such relevant evidence "as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002). In determining whether substantial evidence exists, the court reviews the record as a whole; however, the court will not substitute its judgment for that of the agency "by reconsidering facts, re-weighing the evidence, resolving conflicts in evidence or deciding questions of credibility." *Schoenfeld v. Apfel*, 237 F.3d 788, 792 (7th Cir. 2001) (citing *Williams v. Apfel*, 179 F.3d 1066, 1071-72 (7th Cir. 1999)). Thus, the standard of review is deferential, requiring only that the ALJ minimally articulate his analysis. Even so, where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). The ALJ is required to build an "accurate and logical bridge" between the evidence and the result. *Id.* at 941. This is not to say that the ALJ must discuss every piece of evidence or testimony. *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). All the ALJ must provide is a "small glimpse" into his reasoning. *Id.* On the other hand, conclusions of law are not entitled to such deference. Thus, if the ALJ commits an error of law, reversal is required "without regard to the volume

Case 2:10-cv-00939-JPS   Filed 12/16/11   Page 3 of 14   Document 21

of evidence in support of the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

To qualify for disability benefits under the Social Security Act, a claimant must be found "disabled." 42 U.S.C. § 423(a)(1)(E). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (quoting 42 U.S.C. § 423(d)(1)(A)); 20 C.F.R. § 416.905(a). The Social Security regulations create a five-step, sequential test for determining whether a claimant is disabled. *Briscoe v. Barnhart*, 425 F.3d at 351. The first step considers whether the claimant is presently employed. 20 C.F.R. § 416.920(a)(4). The second step evaluates whether an alleged physical or mental impairment (or a combination of impairments) is severe, medically determinable, and meets a durational requirement. *Id.* The third step compares the impairment to a list of impairments that are considered conclusively disabling. *Id.* If the impairment equals one of the listed impairments, the claimant is considered disabled; if the impairment does not equal a listed impairment, the evaluation continues. *Id.* The fourth step assesses a claimant's Residual Functional Capacity ("RFC") – that is, the work the claimant can still do despite her physical and mental limitations – and her ability to engage in past relevant work. *Id.* If the claimant is able to engage in past relevant work, the claimant is not disabled. *Id.* If the claimant has no past relevant work or is unable to engage in this work, the disability determination moves to step five. *Id.* The fifth step also assesses the claimant's RFC, as well as her age, education, and work experience. *Id.* If the

claimant can make an adjustment to other work, based on all these factors, she is not disabled. *Id.*

3.      The ALJ's Decision

The court begins by reviewing the decision of the ALJ. In this case, at steps one and two, the ALJ determined that Coppersmith had not engaged in substantial gainful activity since October 21, 2004, and that she had severe impairments due to somatoform disorder, affective disorder, history of aneurysm, and vertigo. (Tr. 12). At step three, the ALJ determined that the claimant's combination of impairments did not equal any of the listed impairments. (Tr. 14). The ALJ next determined that Coppersmith had an RFC to perform less than a full range of sedentary work. (Tr. 18). He found that she could lift and carry ten pounds occasionally and ten pounds frequently; stand and walk about two hours in an eight-hour workday; and sit for at least six hours in an eight-hour workday. (Tr. 18). The ALJ found Coppersmith was limited to jobs that could be performed while using a hand held assistive device for prolonged ambulation and was further restricted from climbing ladders, ropes, or scaffolds, although she could occasionally climb ramps and stairs. (Tr. 18). She was limited to occasional stooping and crouching; had to avoid work around concentrated exposure to extreme cold, heat, humidity, excessive noise, irritants, and moving machinery; and she needed to avoid all exposure to unprotected heights. (Tr. 18). The ALJ also found that Coppersmith was limited to the performance of simple, repetitive tasks. (Tr. 18). At step four, the ALJ concluded that Coppersmith was unable to perform her past relevant work as a day care worker. (Tr. 18). Lastly, using the Medical-Vocational Rules or grids as a framework, together with the testimony of a vocational expert ("VE"), the ALJ found that plaintiff

could perform a significant number of other jobs in the economy and, therefore, she was not disabled.

4.      Discussion

Coppersmith disputes the ALJ's determination and alleges that the ALJ committed several errors in reaching his conclusions. First, Coppersmith argues the ALJ erred in making his RFC determination by misunderstanding her somatoform disorder. Moreover, Coppersmith argues that the ALJ improperly rejected the opinions of her treating source. Coppersmith also contends that the ALJ erred in making his credibility determination. Lastly, plaintiff asserts that the ALJ's step five decision was based on an improper hypothetical question.

4.1     RFC Determination

Coppersmith first takes issue with the ALJ's RFC determination. Specifically, Coppersmith argues that the ALJ had a pervasive misunderstanding of plaintiff's somatoform disorder. "The term 'somatoform disorder' refers to what used to be called 'psychosomatic' illness: one has physical symptoms, but there is not physical cause." *Sims v. Barnhart*, 442 F.3d at 537. According to the Social Security Administration regulations, somatoform disorder is characterized by "[p]hysical symptoms for which there are no demonstrable organic findings or known physiological mechanisms." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.07. It is not entirely clear from the plaintiff's brief what she claims the ALJ misunderstood about her somatoform disorder. Indeed, the ALJ recognized that the claimant's somatoform disorder was one of the severe impairments from which she suffered.  As best as the court can discern from the plaintiff's disconnected argument in this respect, it would appear that Coppersmith disagrees with

Case 2:10-cv-00939-JPS   Filed 12/16/11   Page 6 of 14   Document 21

the ALJ's findings regarding the frequency and severity of her dizziness spells and how those findings affected her RFC. Ultimately, however, this is an argument regarding not simply the ALJ's RFC determination, but rather the ALJ's credibility determination. As explained in *Sims v. Barnhart*, 442 F.3d at 537, in cases where somatoform disorder is at issue, a problem of proof arises because the symptoms reported by the claimant cannot be verified by medical experts. Much like the classic example of complaints of pain – here, the plaintiff's complaints of debilitating dizziness cannot be independently verified. Thus, there is great difficulty in determining whether Coppersmith is really experiencing the frequency and intensity of the dizzy spells that she reports. In these types of cases, an ALJ must, of necessity, base his decisions on the credibility of the claimant's testimony. That is precisely what the ALJ did in this case. After noting that Coppersmith had undergone extensive medical work-ups, including diagnostic tests and physical examinations, most of which were negative or normal, he noted, as her doctors had, that there was no clear physical etiology for her problems, and that her symptoms likely stemmed from her somatoform disorder or her affective disorder. (Tr. 15). Accordingly, the ALJ appropriately looked to the opinions of her treating physician – which were based only on Coppersmith's subjective complaints – as well as to her own testimony regarding her symptoms to determine her RFC.

As the court will discuss in the next subsection, the ALJ's credibility determination with regard to the frequency and intensity of the claimant's symptoms was neither unreasonable nor unsupported and, therefore, the court will not reverse that finding. Moreover, contrary to the claimant's

argument, the ALJ did not improperly reject her treating physician's opinions.

The Social Security regulations state that an ALJ must give a treating physician's opinion controlling weight if two conditions are met: (1) the opinion is supported by "medically acceptable clinical and laboratory diagnostic techniques"; and (2) it is "not inconsistent" with substantial evidence in the record. *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010) (quoting 20 C.F.R. § 404.1527(d)(2)). Nonetheless, an ALJ may properly reject a doctor's opinion when considering an application for SSI benefits if it appears to be based on a claimant's exaggerated subjective allegations. *Dixon v. Massanari*, 270 F.3d at 1178. Furthermore, a claimant is not entitled to disability benefits simply because her treating physician states she is unable to work. *Id.* at 1177. Ultimately, it is the Commissioner, not a doctor selected by the patient to treat her, who decides whether a claimant is disabled. *Id.*

In this case, plaintiff's neurologist, Dr. Helms, completed a Medical Source Statement on September 27, 2006, in which she stated that Coppersmith was incapable of performing even sedentary work. (Tr. 511-15). She stated that Coppersmith could lift and carry ten pounds occasionally and ten pounds frequently; stand and walk less than two hours in an eight-hour workday; and sit for about two hours in an eight-hour workday. (Tr. 512). Dr. Helms opined that Coppersmith would sometimes need to take an unscheduled break during a work shift – generally once a day, and that such breaks would often require the plaintiff to sit alone or lie down. (Tr. 512). Dr. Helms further noted that plaintiff often experienced pain, fatigue, or other symptoms severe enough to interfere with attention and concentration. (Tr. 512). Dr. Helms limited plaintiff to occasional twisting, crouching, and stair

climbing, and no stooping, bending or ladder climbing. (Tr. 514). Dr. Helms also noted that plaintiff was unable to walk without a walker, she needed to avoid all exposure to hazards and, on average, Coppersmith would be absent from work more than three times a month due to her impairments. (Tr. 315).

The ALJ considered Dr. Helms's opinion, accepting and incorporating some portions of it into his RFC determination, but rejecting other portions. The ALJ explained his rejection of portions of Dr. Helms's opinion – most significantly, that claimant would be absent from work more than three times per month – by stating that this portion of the opinion was inconsistent with and unsupported by Dr. Helms's own treatment notes. In this respect, the ALJ noted and the record reflects that from May 23, 2006, to September 27, 2006, Dr. Helms consistently documented claimant's physical and neurological examinations to be near normal, with few objective positive findings or limitations. The ALJ also found that Dr. Helms had stated in her treatment notes that claimant appeared to be embellishing her symptoms. (Tr. 15, 436-40, 450-52, 462-68, 578-629). The ALJ further observed that neither Dr. Helms, nor plaintiff's primary care physician, Dr. Ahmed, assessed any functional limitations in their treatment notes or provided any objective medical evidence to support the claimant's statements regarding episodes of dizziness and falling. Yet, nevertheless, Dr. Helms still found claimant was unable to perform sedentary work and would need to be absent more than three times per month. The ALJ found this conclusion was not supported by the treatment notes.

In this case, the court finds that the ALJ properly rejected certain portions of Dr. Helms's opinion because it was not supported by medically acceptable diagnostic techniques, nor were these portions of her opinion

consistent with or supported by substantial evidence in the record, most notably her own treatment notes. Indeed, the ALJ properly rejected Dr. Helms's opinion that plaintiff could not perform sedentary work because it was entirely based on Coppersmith's subjective allegations – allegations which the ALJ found to be exaggerated and not entirely credible, a decision this court does not find error with, as will be discussed below. As such, the court cannot find error with the ALJ's refusal to assign controlling weight to Dr. Helms's opinion. Moreover, the court finds the ALJ's RFC determination is supported by substantial evidence.

### 4.2    Credibility Determination

Plaintiff asserts that the ALJ's credibility determination is in error because he failed to discuss all of the relevant factors addressed in Social Security Ruling 96-7p. In determining credibility, an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons. *See* 20 C.F.R. § 404.1529(c); S.S.R. 96-7p;. *Steele v. Barnhart*, 290 F.3d 936, 941-42 (7th Cir. 2002). A reviewing court may reverse an ALJ's credibility determination only if it is so lacking in explanation or support that it is "patently wrong." *Simila v. Astrue*, 573 F.3d at 517.

Here, the ALJ found that plaintiff's reports of pain and restricted motion, along with her other symptoms, though credible to a certain degree, were not credible to the extent the plaintiff claimed. To support this conclusion, the ALJ noted that, given Coppersmith's complaints of dizziness and falling several times a day, it was inconceivable that she was trusted to care for her one-year old niece, as she had testified. (Tr. 17). Moreover, the

ALJ found that despite Coppersmith's complaints of pain – especially headaches – she did not take significant pain medications. (Tr. 17). The ALJ also pointed out many inconsistencies in the plaintiff's testimony, concluding that she exaggerated her symptoms and altered her story at the hearing to support her claim for disability. (Tr. 15). For example, the ALJ pointed out that claimant testified that her dizzy spells started in 2004 and occurred six to seven times per day. (Tr. 15, 38-39). She also testified that in 2007, after her doctor altered her medication, she was dizzy only four or five times per day. (Tr. 15, 38-39). She also affirmed that she had consistently felt dizzy every day for the past several years. (Tr. 15, 39). Yet, the ALJ noted that when he questioned her about comments she had made to Dr. Helms in April of 2007, that she was down to only one to two dizzy spells per week, the claimant changed her testimony to say there was a short period of time during which she had gotten better because the doctors had found the correct combination of medication. (Tr. 15). However, her doctors then changed her medication, and her dizzy spells again worsened. (Tr. 15). The ALJ found it particularly troubling that the claimant could not explain why her doctors would have changed her medications or her therapy after they found them to work well for claimant, and he discounted her credibility accordingly. (Tr. 15). The ALJ also considered the claimant's daily activities. (Tr. 17). Yet, much like her allegations regarding the frequency of her dizzy spells, the ALJ found Coppersmith's representations that she was drastically limited in her daily activities to be inconsistent with statements she had made previously to her physicians. (Tr. 17). The court cannot find fault with the ALJ's conclusion in this respect. Moreover, the ALJ found that claimant's allegations regarding both her symptoms and her limited daily activities were eroded by the fact

Case 2:10-cv-00939-JPS   Filed 12/16/11   Page 11 of 14   Document 21

that Coppersmith needed minimal analgesics for her conditions and few neurologic findings supported the extent of her subjective reports of pain.

The record amply supports the ALJ's conclusion that Coppersmith's assertions of pain are not supported by clinical diagnoses and other medical evidence. Although an ALJ may not ignore a claimant's subjective reports of pain simply because they are not fully supported by objective medical evidence, discrepancies between objective evidence and self-reports may suggest symptom exaggeration. *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005). Here, the ALJ properly considered Coppersmith's testimony in light of the factors enumerated in SSR 96-7p and concluded that Coppersmith had significant functional limitations that precluded some, but not all, work. Moreover, the court can easily follow the ALJ's reasoning. Accordingly, the court determines that the ALJ's credibility determination was not patently wrong and, therefore, it should not be disturbed.

### 4.3     Step Five Decision

Plaintiff argues that the ALJ erred in his decision at step five of the sequential disability analysis by failing to include all of the plaintiff's limitations in the hypothetical questions he posed to the vocational expert. Specifically, Coppersmith notes that the ALJ's hypothetical questions were incomplete because he omitted any mention of Coppersmith's moderate difficulties with concentration, persistence, and pace, and instead merely limited plaintiff to simple, routine, and repetitive tasks. Under the ordinary rule – that an ALJ's hypothetical questions to a VE "must include all limitations supported by medical evidence in the record," *Steele v. Barnhart*, 290 F.3d at 942 – these limitations would have to be included, as the ALJ found Coppersmith had moderate difficulties in concentration, persistence

Case 2:10-cv-00939-JPS   Filed 12/16/11   Page 12 of 14   Document 21

or pace. (Tr. 17-18). Indeed, the Seventh Circuit has stated that, in most cases, employing terms like "simple, repetitive tasks" on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010). However, there is an exception to this rule, when the record indicates that the VE "independently learned of the limitations (through other questioning at the hearing or outside review of the medical records, for example) and presumably accounted for them." *Steele*, 290 F.3d at 942.

Here, the Commissioner argues that this case falls within the exception to the general rule because Coppersmith's moderate limitations in concentration, persistence, or pace stem from her somatoform disorder, of which the VE was well aware. As such, the Commissioner compares Coppersmith's case to *Simila v. Astrue*, 573 F.3d at 522, where the court found that a hypothetical mentioning claimant's underlying condition (pain and a somatoform disorder), but not his limitations in concentration, passed muster, because the underlying conditions caused the limitation in question. The Commissioner contends that Coppersmith's moderate limitations in concentration stem from her somatoform disorder. The Commissioner further contends that the link between Coppersmith's somatoform disorder and her concentration abilities was apparent enough that the ALJ's incorporation of those difficulties by reference to Coppersmith's disorder in his hypothetical was consistent with the general rule.

However, the Commissioner's argument is without merit because the ALJ never found that the claimant's moderate limitations in concentration, persistence, and pace stemmed from her somatoform disorder. Rather, the

ALJ found Coppersmith had difficulty concentrating because of "situational stressors." (Tr. 18). What is more, the ALJ never mentioned Coppersmith's somatoform disorder in the hypothetical questions posed to the VE. Instead, the ALJ described some of the claimant's physical impairments and limited claimant to "simple, routine, repetitive tasks." (Tr. 54). These hypothetical questions, quite simply, do not adequately account for Coppersmith's moderate limitations in concentration, persistence, and pace. Therefore, the court is obliged to remand this case to the Commissioner.

Accordingly,

IT IS ORDERED that the decision of the Commissioner denying the claimant's application for supplemental security income be and the same is hereby VACATED and REMANDED for further proceedings consistent with this opinion.

The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 16th day of December, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge